## Peoria, Decatur & Evansville Ry. Co. v. James W. Ross.

1. NEGLIGENCE—*When Contributory is a Bar to a Recovery.*—If the guard opposite a switch of a railroad company is dangerous, it is presumable that an employe, who for sixteen months had been constantly at work by it, knew it, and voluntarily incurred the risk resulting from its use.

**Memorandum.**—Action for personal injuries.   In the Circuit Court of Coles County; the Hon. Francis M. Wright, Judge, presiding.   Declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant.   Heard in this court at the May term, 1894.   Reversed and remanded.   Opinion filed December 14, 1894.

Stevens & Horton and H. A. Neal, attorneys for appellant.

Horace S. Clark, attorney for appellee.

Mr. Presiding Justice Wall delivered the opinion of the Court.

This is an appeal from a judgment for $5,000 rendered in favor of the appellee against the appellant.   The cause of action alleged was that the appellee, being employed by the appellant, sustained a serious personal injury through the negligence of the latter.   There is practically no conflict of proof as to most of the important facts.

Appellee was a " coaler," and his duties as such required him to assist in coaling engines, which were to be sent out on the road.   This was done in what was known as the " round-house yard."   This yard adjoined the round house and contained several short tracks running from the turntable and round house to the switch, which connected with another short track leading to the main track.

On the occasion in question appellee was engaged in some necessary switching of coal cars on these short tracks inside of the round-house yard.   The engine was in charge of one Wooley, who was called a " hostler," whose duties required him to take care of the engines after they came into the yard and to move them about when such switching as here referred to was to be done.

It became necessary to uncouple a car which was attached to the front end of the engine.   Appellee, while the car and engine were moving slowly, stepped between them, pulled or raised the coupling pin, and endeavoring to step away, his foot slipped between the main rail and a guard rail, and was caught so that he could not withdraw it, and

though he made an outcry, and though the "hostler" in charge of the engine made every effort in his power to stop, he was unable to do so in time to avoid injury to appellee, whose foot was so crushed that amputation was necessary.

The specific grounds upon which it is sought to predicate liability are, first, that the "hostler" was not competent to handle the engine and that for this reason he was unable to stop in time, as a competent man might, and would have done, and that the appellant was negligent in employing him and placing him in charge of the engine; second, that the space between the main rail and the guard rail was too wide and was unfilled, and that appellant was negligent in so constructing it and in permitting it to so remain. As to the first, we think the evidence wholly fails to show that the injury of appellee was the result in any appreciable degree of an inefficient act of the "hostler." When the appellee uncoupled the car from the engine and was ready and about to step away, he was close to and partly in front of the pilot, and, of course, inside of the guard rail, and but a very few feet, probably not more than four to six, in front of the forward trucks of the engine. During the brief space of time when he was trying to withdraw his foot and before even he realized the situation, the engine had advanced on him so that when he gave the alarm, he had barely time to throw his body beyond the rail before the truck reached his foot. The "hostler" acted instantly and stopped within nine feet, which, according to the evidence, was a good stop under the circumstances. It is apparent that it was impossible to stop in time to save the appellee. We do not believe from the evidence that the most skillful engineer, acting with ordinary self-possession and with all the means at command, could have done so.

The great weight of the evidence is that the "hostler," who had been employed in that capacity for several years, was reasonably competent for the service he was required to perform, and so the appellant was not negligent in respect to his employment.

We have no hesitation in saying that the proof wholly

fails to support the first ground of recovery alleged by the appellee.

As to the second, the guard rail was opposite a " frog," and was a necessary device to prevent the wheels from leaving the main rail at such a point.

When the guard rail is properly placed, the intervening space is about two and a half inches. There is, as shown by the proof, no general or well settled usage to fill this space, though it is sometimes done at the ends or near the ends by what is termed " blocking." There is no general practice to fill the space with earth or cinders or other like substances. It is done sometimes, but not always, nor, so far as the evidence shows, generally.

The proof is not very satisfactory as to the width of the space in this instance. It was probably over the two and one-half inches and may have been four, which was the highest estimate.

We think it unnecessary to determine just how much too wide it was or just how much negligence there was in its original construction, or in allowing it to remain as constructed, or as it might have become by use, or in leaving it unfilled. The appellee was familiar with the situation. For a period of more than sixteen months he had been constantly at work in this yard and had ample opportunity for observing the distance of this guard rail from the main rail and that the space was unfilled. He either did not notice it or did not consider it the subject of complaint or objection.

If it was in fact dangerous, it is fairly presumable that he knew it and that he voluntarily incurred the risk resulting from its use. Most probably, as we think, there was nothing unusual about it and that no one considered it dangerous or would have so considered it, but for this accident. But conceding it was, we are clearly of opinion that whatever of negligence may be imputed to the appellant, the appellee was guilty of such contributory negligence as to bar his complaint in that regard. As already stated, he undertook to uncouple the car from the engine while they

were in motion, and although, as he says, the speed was not more than two miles per hour, or not faster than an ordinary walk, yet he incurred a great and wholly unnecessary hazard in so doing. If by any mischance he failed to get out, and especially if caught, as he was, fearful injury, if not loss of life, was almost inevitable. When he found he could not extricate his foot, the front wheel of the engine was upon him, and the only thing to be hoped for was that he might escape with the loss of limb. It need not be argued that one who takes such a risk merely for the purpose of saving the time necessary to stop before uncoupling, does not exercise due care.

This seems to us so manifest that the mere statement should suffice. We can not accept the verdict to the contrary.

It follows that in our opinion the motion for a new trial should have been allowed.

The judgment will be reversed and the cause remanded.